IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MATLOSZ,<br>    *Plaintiff,* | : <br> : <br> : | CIVIL ACTION <br> NO.   2:20-cv-05027 |
| v. | : <br> : | |
| LIBERTY COCA-COLA BEVERAGES, LLC, <br> And TEAMSTERS LOCAL UNION NO. 830, <br>     *Defendants.* | : <br> : <br> : | |

## TEAMSTERS LOCAL UNION NO. 830'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

**I.     INTRODUCTION**

Plaintiff, Michael Matlosz ("Matlosz" or "Plaintiff"), a member of Defendant Teamsters Local Union No. 830 (the "Union"), has brought this action against the Union, as well as against Liberty Coca-Cola Beverages, LLC ("Liberty") (the Union and Liberty, collectively the "Defendants"). In his Complaint, Matlosz makes numerous allegations against the Union. The Union has filed the instant Motion to Dismiss because none of those allegations amount to a valid claim under any law. As such, the allegations against the Union should be dismissed in their entirety for failing to state a claim for which relief may be granted.

**II.     STATEMENT OF FACTS**[1]

The Union is the exclusive bargaining representative of employees who work in Liberty's facilities in the City of Philadelphia, Pennsylvania. On April 15, 2018, Liberty and the Union entered into a collective bargaining agreement ("CBA") which sets forth the terms and conditions

---

[1] For purposes of this motion only, the Union assumes, as it must in a Rule 12(b)(6) motion, that the well-plead allegations of Plaintiff are true. Fed. R. Civ. P. 12(b)(6). Nothing in this statement of facts should be construed as an admission on the part of the Union to any claim or fact raised in the Complaint.

of employment of the employees who are employed by Liberty and represented by the Union. A copy of the CBA is attached to this Motion as Exhibit A.[2]

On or about August 9, 1999, Matlosz was hired as a service truck driver by Liberty, a job which requires a commercial driver's license ("CDL"). (Complaint ¶¶15, 19) Matlosz subsequently developed a problem with his vision. (Complaint ¶17) Due to the loss of his vision, his CDL was rescinded. (Complaint ¶18) Because he could no longer work as a driver, Liberty reassigned Matlosz to vending services, a job which did not require a CDL. (Complaint ¶19)

Under Article 30, Section 9(a), of the CBA (Exhibit A, p. 50), vending services positions are put up for bid every six months. In other words, every six months, Liberty's employees are allowed to submit bids for every vending services job, and those jobs are awarded on the basis of seniority. In or around April 2019, Liberty informed Matlosz that a more senior employee had successfully bid on his vending services position and thus that job was no longer available to him. (Complaint ¶21) Matlosz alleges that Liberty "expected [him] to work on trucks" which he could not do because of his visual impairments. (Complaint ¶¶22-23)[3] Liberty subsequently terminated Matlosz's employment because he was unable to drive a truck. (Complaint ¶26)

---

[2] While generally courts will only consider the allegations in the complaint and its exhibits in deciding a 12(b)(6) motion, it may also consider documents that are "integral to or explicitly relied upon in the complaint," In re *Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997), as well as "undisputedly authentic document[s]" that the plaintiff's claims are based upon. *PBGC v. White Consol. Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because Matlosz's terms and conditions of employment were governed by the CBA and because the options available to the Union in its representation of Matlosz are defined by the CBA, the CBA is integral to the allegations set forth in the Complaint. The Complaint also explicitly relies upon the CBA when it refers to that legal document in paragraph 16, and to the grievance and arbitration procedure in the CBA in paragraph 37.

[3] Although it is not pled in the Complaint and thus outside the scope of this Motion, Liberty also offered Matlosz other positions that did not require a CDL. Matlosz turned down those alternative positions because he wanted to stay in the vending services job.

The CBA contains a grievance and arbitration procedure to resolve any "grievance or dispute arising under the terms of" the CBA. (Exhibit A, p. 35) The grievance procedure contains several steps which culminates with "final and binding" arbitration. (Exhibit A, p. 36) After he was terminated, Matlosz asked Glenn Fulcher, Vice President of the Union, about his termination and specifically whether Liberty was permitted to allow a senior employee to take his vending services job in light of his right of accommodation for his disability. (Complaint, ¶27) According to Matlosz, Fulcher consulted with the Union's counsel and informed Matlosz that the Union could not assist him because "seniority trumps disability." (Complaint, ¶27)

### III.   ARGUMENT
#### A.   Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). The applicable inquiry under 12(b)(6) is well-settled.  Such a motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir. 1980). Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). See *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir. 1997); *Kassner v. 2nd Ave. Delicatessen,* 496 F.3d 229, 237 (2nd Cir. 2007).

Simply, a complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal,* supra). If it fails to do so, the defendant is entitled to the affirmative defense provided by Rule 12(b)(6). The Union submits that the Complaint does not state any claim against it upon which relief can be granted and so the Union is entitled to relief under Rule 12(b)(6).

      **B.**      **The Union's Justifiably Exercised its Discretion Not to Contest Matlosz's Discharge**

To establish a prima facie case under the ADA, a plaintiff must show that he is: (1) a qualified individual with a disability, and that he (2) has suffered an adverse action by the defendant because of that disability. *See Eshelman v. Agere Sys., Inc.* 554 F.3d 426, 433 (3d Cir. 2009); *Turner v. Hershey Chocolate USA,* 440 F.3d 604, 611 (3d Cir. 2006); *Akin v. York Cty. Prison*, No. 1:09-CV-02484, 2010 WL 2342502, at *4 (M.D. Pa. June 8, 2010). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973), *Akin*, 2010 WL 2342502, at *4. The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination. *Id.*

The Union is not the employer. It cannot decide which assignments are given to employees or decide whether to terminate employees' employment. Indeed, under the CBA, those decisions are expressly reserved for the employer, Liberty. (Exhibit A, p. 23) The only avenue for the Union to contest Liberty's job assignment or termination decision is through the grievance and arbitration procedure in Article 23 of the CBA. (Exhibit A, pp. 35-37) Thus, to prevail on its claim against

the Union, Plaintiff must establish that the Union decided not to pursue a grievance and arbitrate that grievance on his behalf *because of his disability*.[4]

Although a labor union owes a duty of fair representation to the employees it represents is well established that a union has "has broad discretion in its decision whether and how to pursue an employee's grievance against an employer." *Raczkowski v. Empire Kosher Poultry*, 185 Fed. Appx. 117, 118 (3d Cir. 2006) (citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567-68 (1990)); *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168-169 (3d Cir. 1999). "The mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious. " *Findley v. Jones Motor Freight Div. Allegheny Corp.*, 639 F.2d 953, 958 (3d Cir. 1981). A union only breaches its duty of fair representation to a bargaining unit member for not taking a grievance to arbitration if it does so arbitrarily, discriminatorily, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991). An act by the Union is considered arbitrary only if it "can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Raczkowski*, 185 Fed. Appx at 118 (citing *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45 (1998)); A*ir Line Pilots Ass'n*, 499 U.S. at 67; *Wilkins v. ABF Freight Systems, Inc.*, No. 03-6610, 2005 WL 2271866, 7 (E.D.Pa. 2005). "The same high threshold applies for bad faith, in which a plaintiff must prove fraud, deceit or dishonesty on the part of the union." *Morris v. United Steel Workers of America Local 4889*, 08-3398, 2010 WL 933807, 6 (E.D. Pa. 2010) (citing *Amalgamated Ass'n. of St., Elec. Ry. & Motor Coach Employees of Am. v.*

---

[4] The Complaint also makes no mention of the fact that Matlosz could have filed a grievance himself even if the Union declined to do so on his behalf. Matlosz, however, never filed his own grievance. His entire argument that the Union violated his rights is based on the premise that it should have taken a step that he was unwilling to do for himself.

*Lockridge*, 403 U.S. 274, 299 (1971)). A union acts in a discriminatory manner by treating an employee differently "because of an 'irrelevant and invidious' distinction." *Morris*, 2010 WL 933807, 6 (citing *Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners*, 676 F.2d 81, 87 (3d Cir.1982)).

It is not enough to demonstrate that "the union committed a mistake in the prosecution of a grievance, nor it is sufficient to show negligence or poor judgment on the union's part." *Bellesfield v. RCA Communications, Inc.*, 675 F. Supp. 952, 955-956 (D. N.J. 1987). "Even a union decision that is ultimately wrong is not a breach of its fair representation duty unless that decision is so unreasonable that it is 'without rational basis or explanation.'" *Raczkowski*, 185 Fed. Appx. at 118 (3d Cir.2006) (citing *Marquez*, 525 U.S. at 46).

Furthermore, because the grievance procedure is limited to disputes over the terms of the CBA (see Exhibit A, p. 35), Plaintiff would have to establish that Liberty's actions violated the CBA and that Union nevertheless decided not to pursue the matter in the grievance procedure because of his disability. The Complaint simply does not plead the facts necessary to establish such a claim. *See Dubose v. Dist. 1199C, Nat. Union of Hosp. & Health Care Employees, AFSCME, AFL-CIO*, 105 F. Supp. 2d 403, 415 n. 14 (E.D. Pa. 2000) (allegations that "pertain solely to the failure of the Union to file a timely grievance on behalf of [the Employee]" are not sufficient to establish a violation of the ADA.)

The closest Plaintiff comes to pleading an actual ADA claim against the Union is when he alleges that Mr. Fulcher told him that "seniority trumps disability." (Complaint, ¶27) In *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), the Supreme Court ruled that an employer that has an established system based on seniority to fill jobs, is not required under the ADA to make special exceptions to that system to accommodate a disability. As the Court ruled: "it would not

6

be reasonable in the run of cases that the assignment in question trump the rules of a seniority system." *US Airways, Inc.*, 535 U.S. at 403. The Court noted that there was nothing in the ADA to suggest that Congress intended to undermine established seniority systems and thus a "showing of violation of the rules of a seniority system is by itself ordinarily sufficient" to dismiss an ADA claim. 535 U.S. at 405.

In other words, Fulcher's statement that "seniority trumps disability" (Complaint, ¶27) is a fair summary of the applicable law and actually paraphrases the above-quoted line from the *US Airways* Supreme Court majority opinion. More importantly, Fulcher's decision, after consulting with legal counsel about the likelihood of success under that law, was a sound use of the Union's discretion whether to pursue a grievance on behalf of Matlosz. Indeed, rather than establishing that the Union made its decision based on a bias against Matlosz for his disability, by quoting Fulcher's statement that "seniority trumps disability," the Complaint makes clear the Union's decision was based on a non-discriminatory legal analysis.

      **C.**      **Breach of Duty of Fair Representation Claims (Counts II and III)**

           **1.**      **Both PA Common Law Duty of Fair Representation and "Fiduciary Duty" under PA law are preempted by LMRA**

The National Labor Relations Act ("NLRA"), 29 U.S.C. §151 et. seq., provides a remedy for employees who are represented by a union to claim that the union breached its duty of fair representation. That remedy is either filing an unfair labor practice charge with the National Labor Relations Board ("NLRB") or filing a private lawsuit against the union under a section 301 of the Act, 29 U.S.C. §185.[5]

---

[5] Although the language of section 301 only refers to lawsuits for breach of collective bargaining agreements, the Supreme Court has recognized that the statute also provides a federal cause of

Counts II and III of the Complaint alleged that the Union either breached the duty of fair representation under Pennsylvania common law, or the fiduciary duty that a union owes its members under Pennsylvania common law. The breach of duty cause of action asserted in each of those counts is preempted by the NLRA. "State law claims are 'presumptively preempted by the NLRA [National Labor Relations Act] when they concern conduct that is actually or even arguably either protected or prohibited by the NLRA.'" *Kilpatrick v. Sheet Metal Workers Int'l Ass'n Local Union No. 19,* No. CIV. A. 96-4862, 1996 WL 635691, at *5 (E.D. Pa. Oct. 30, 1996) (quoting *Pennsylvania Nurses Ass'n v. Pennsylvania State Education Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996)). Indeed, courts have held that claims based on an alleged breach of a state-law fiduciary duty theory or a common law duty of fair representation are preempted by the NLRA. *See Kilpatrick,* 1996 WL 635691, at *6 (concluding common law fiduciary duty preempted by NLRA)*; Fischer v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 17-CV-174-WMC, 2017 WL 4712228, at *2 (W.D. Wis. Oct. 18, 2017) (Noting that federal circuit courts have regularly concluded that "state-law claims against labor unions are preempted by the NLRA if they attempt to impose a duty of fair representation.").[6]

Thus, as a matter of law, the claims raised in Counts II and III against the Union are preempted by federal law.

---

action for breaches of the duty of fair representation (whether or not there is a formal labor contract) imposed by the NLRA. *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971) ("[B]reach of a union's duty of fair representation [is] judicially cognizable ...whether or not the lawsuit [is] bottomed on a collective agreement.").

[6] The case cited by Plaintiff in the Complaint, *Case v. Hazelton Area Educ. Support Personnel Ass'n*, 928 A.2d 1154, 1158 (Pa. Commw. Ct. 2007), involved employees employed by a public school district. The NLRA only applies to private-sector employees. See 29 U.S.C. §152(2) (excluding "any State or political subdivision thereof" from the definition of "employer" under the NLRA). Thus, that case, unlike the instant matter, did not raise any preemption issue.

### 2.  Any Claim that the Union Breached Its Duty of Fair Representation is Untimely

Either an NLRB charge claiming a breach of the duty of fair representation or a private lawsuit under section 301 must be commenced within six months of the date of the union's alleged violation. 29 U.S.C. §160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–70 (1983) (adopting the six-month statute of limitations for unfair labor practice charges as the limitations period for claims of breach of duty of fair representation in section 301 lawsuits).

The Complaint alleges that Matlosz was terminated on May 17, 2019. Complaint ¶26. Under the CBA, the request to arbitrate a discharge must be made "within fifteen (15) working days from the date of the discharge or it shall not be subject to arbitration." (Exhibit A, p. 36) Thus, any alleged breach by the Union for not arbitrating the discharge occurred on or about June 10, 2019.[7]

This lawsuit was filed on October 9, 2020, fifteen months after the Union's alleged breach. Because the alleged breach of the duty of fair representation occurred more than six months prior to the commencement of this lawsuit, any assertion of such claims under the federal statute would be untimely. To the extent Counts II or III may be characterized as an attempt to plead a cause of action under federal law for an alleged breach of the duty of fair representation, any such claim should thus be dismissed.

---

[7] Although Liberty runs a seven day operation, we have calculate this date by assuming that five calendar days is one calendar week. Three weeks from May 17, 2019 is Friday, June 7, 2020. We then added advanced the count by another week-day, to Monday, June 10, 2020, to account for the occurrence of the Memorial Day holiday during that three calendar week period.

### 3. The Union Did Not Breach Its Duty of Fair Representation

In the alternative, even if Plaintiff were able to get past the preemption and untimeliness of his duty of fair representation claim, the facts alleged in the Complaint cannot establish that the Union violated its duty of fair representation. As noted above in Part III.B. of this Brief, the standard used to evaluate whether a union violated the ADA in its representation of a bargaining unit member incorporates an analysis of whether the union violated its duty of fair representation towards that individual. Thus, for the same reasons in Part III.B. of this Brief that establish the Union did not violate the ADA in its handling of Matlosz's grievance, also establish that the Union did not violate its duty of fair representation.

## IV. CONCLUSION

For the foregoing reasons Defendant Union respectfully requests that Plaintiff's Complaint be dismissed with prejudice in its entirety.

Respectfully submitted,

**CLEARY, JOSEM & TRIGIANI, LLP**

BY:   /s/ *Jeremy E. Meyer*
          JEREMY E. MEYER
          Constitution Place
          325 Chestnut Street, Suite 200
          Philadelphia, PA 19106
          (215) 735-9099
          *Attorney for Defendant Union*

Dated:   December 10, 2020